Alright, Illinois Public Courts 6th Division is now in session. The Honorable Justice Thomas E. Oakle, Mr. President. Yes, ma'am. Go ahead, call the roll. Case number 16, badge 2369, Jerry Ariant v. Yasir I. Khan-Hussein, M.D. Counselors, Justice Conner, the member of this panel on this case, she'll have available to her the tapes of the oral argument and she'll participate in the decision. The time on this case is 15 minutes for the appellant, 15 minutes for the appellee, 5 minutes in rebuttal. Counsel. May it please the court, my name is Tim Eaton and I represent the defendants. Your Honor, Dr. Hussein, who was a defendant in this case, we believe was denied a fair trial because the plaintiff's expert was able to testify repeatedly that Dr. Hussein violated an Illinois law by performing the surgery in question, because he did not have applicable privileges at the Orlin Surgical Center where the surgery on Ms. Ariant was performed. In fact, despite the fact that the trial judge denied the motion in limine initially, repeatedly denied objections during the trial when issues were being asked about the Illinois statute involved, which is the Ambulatory Surgical Center Treatment Act, even the trial judge acknowledged at the instruction conference that that law did not apply to Dr. Hussein. It did apply to the Orlin Surgical Center. But such an acknowledgment, in our opinion, Your Honors, by the trial judge was too late, because throughout the trial, Counsel for the Plaintiff harped on the issue of credentials with almost every witness. After the trial, when the trial judge determined that Counsel was correct and that there was no statutory violation, defendants requested a curative instruction, which was again denied by the trial judge, suggesting that it was not much of an issue. Mr. Eaton, assuming that we agree with you, and it's an assumption, I actually posed the question, that the evidence regarding the credentials was somehow in front, all right? Why doesn't the general verdict rule still save the verdict? For several reasons, Your Honor, and I'm glad you asked that question, because it was raised as a defense, as you know. In this case, it's our opinion that the so-called illegality issue permeated throughout the entire trial and created errors to every allegation that was made in the count dealing with negligence. And the reason why is that this was a gateway allegation. In other words, once he did not have credentials and it was testified to by plaintiff's expert that it was illegal, that tainted every allegation as to how he performed the operation. Because, as you know in the general verdict rule, generally you test the general verdict by a special interrogatory to kind of get around it. I don't know how there could have been a special interrogatory that would have addressed it. In fact, in thinking about that. Well, here, let me try. You have two main problems with what went on at this trial. The allowance of all this testimony and opinions by doctors is what violates state statute, or doesn't, vis-a-vis credentialing. Number two, you were prohibited from introducing evidence that her smoking could have been the cause of the injury. It went to the jury with instructions of negligence, A, by performing the block of the absolute alcohol. It has nothing to do with smoking and it has nothing to do with credentialing. Failing to recommend and or attempt to treat the abdominal pain using conservative methods. The smoking issue would have gone and you were prohibited from defending. Injecting absolute alcohol into the artery. It has nothing to do with credentialing and it has nothing to do with smoking. You're failing to possess privileges to perform CELIAC block. Now, there's a serious question whether that ever should have gone to the jury at all, because there's no proximate causal relationship between having a license and an injury suffered. It may be evidence of negligence, but it certainly isn't a standard proximate causal relationship. And failing to place spinal needle in front of the L1 vertebral body. Nothing to do with smoking and nothing to do with credentialing. So now the question, I'm back to his question, under Witherall v. Raymond. Why aren't they allowed to defend their verdict based on the fact that you didn't ask any special interrogatories and you got a general verdict in this case? The general verdict, Your Honor, is essentially a harmless error rule. Basically saying, and its origin was dealing with insufficiency of the evidence. We had one count that had been proven, one count that had not been, and as long as there was a good count, then the courts would say that's harmless error. It's our argument, and I think it's borne out by what happened at this trial, that the issue of the legality of his credentials had the effect of prejudicing every single allegation. For example, if we wanted to have a special interrogatory, and I know I'm being somewhat facetious in saying this, but it would be putting aside that he could not perform the operation legally, was Dr. Hussain negligent when he performed the celiac plexus neuroleptic block with absolute alcohol, even though it was not indicated. That's the framework of how those allegations were given at trial. The framework was he should not have performed this in the first place, because according to Dr. Noah Plinth, his x-ray, it was illegal. And Presiding Justice Hoffman just parsed out the specific charges to the jury. They identified which ones. There's one in there about injecting into the wrong, you know, negligently inserting the needle with the absolute alcohol. It's a standard, straightforward medical malpractice allegation. You've got a challenge here in this case, because you talk about the general verdict rule cases, and you've briefed them back and forth, but there doesn't seem to be a key case that you're relying on that establishes the exception to the rule that you're urging upon us, which was if there's some kind of damning evidence that somehow infects every cause of action, then everything goes, even if it might stand by itself all right. You're right. And where we rely upon, Your Honor, is the fact that the general verdict rule is a presumption that it was harmless error, and presumptions can be overcome. I'm not sure it's a harmless error rule. Witherall, by the way, they don't have to be pleasant specialists in separate counts. That's not what Witherall, Mr. Prime Minister, said. I'm not saying that. Witherall says if several rounds of recovery are pleaded in support of the same claim, whether in the same or different counts, the entire verdict rendered for that claim should not be set aside or reversed for any reason, that any ground is deficient if one or more of the grounds is sufficient to sustain the verdict. And Witherall goes on to say when there's a general verdict and more than one theory is presented, the verdict will be upheld if there is sufficient evidence to sustain any theory and the defendant having failed to request special interrogatories, and they cannot complain when they don't. And so my difficulty in this case is I'll concede that there was, I mean, for the sake of analysis, it was absolute error that I had the right to introduce the evidence of smoking. It deprived you of your dissent. And this nonsense that the prejudice outweighs its probative value was silly. But the smoking didn't go to all the allegations that went to the jury. There never should have been instruction that it was negligent because he didn't have a license or it wasn't credentialed. No proximate causal relationship. Never should have been any testimony by a doctor that the other doctor violated the law in giving legal opinions. It never should have happened. But the fact of the matter is those two errors within this trial don't go to all of the issues that went to the jury. Smoking went specifically to the issue of causation as well. Smoking went to the issue of whether or not the coroner's death certificate that she died of a stroke was something that could be challenged by Dr. Coe. And Dr. Coe testified in his deposition that, in fact, smoking was a risk factor for strokes. And then because of the blanket prohibition. I don't dispute that it was error to deny you the right to defend on that based upon the deposition testimony. It clearly was. But it didn't go to every issue in the case. But it did go to the issue of whether or not she died as a result of any of those allegations. The jury awarded damages specifically for the survivor. Yes. The claim was because of these acts of negligence, she died a couple years later when she was taken to a nursing home after the paraplegia. That was the causation that they alleged. And they had to prove causation as a matter of law. And yet, Dr. Coe testified when he was asked by plaintiff's counsel who invited the error, even after the blanket prohibition, were there any risk factors for a stroke. And he said no. Why? Because he had said in his deposition, yes, in fact, there was. And smoking was one of them. But we couldn't challenge that statement. And so we believe that that was there because it went directly to the issue of causation because what they're alleging in their complaint was in that count, there are five different types of negligence that Your Honor just recounted. But they said, and that caused her death. Well, the fact is the coroner said she died of a stroke. And we couldn't get in evidence as to her smoking habits, which went directly to the risk factors for a stroke. So I think that's a little bit different, Your Honor, than the fact that smoking may have also affected some of those counts in the allegation as to negligence. That's a little different issue because it relates to causation. But let me go back to the general rule, general verdict rule again, if I may. This is what you're right. I could not find a case that said that if the other allegations are affected, then is that enough to overcome the presumption? But what I can say is that when I look at cases from this court, Robinson recited, it relied largely on the Tabby case, where in that case there had been a defense verdict. The error that the court found was the giving of the sole proximate cause instruction, the longer form of the instruction. And that was a challenge. And they said, well, you didn't have a special rerogatory because the jury could have found there was a breach of duty. Or they could have found there was no causation. But because you didn't single any of those out. Now, the sole proximate cause instruction in no way, shape, or form could have affected or perjudiced whether or not there was a breach of duty because it had nothing to do with those other allegations with respect to breach of duty. In this case, it's so highly prejudicial to say that this doctor performed that illegally. It was against the law. And because of that fact, everything he did is viewed in that framework. And so our argument is that if this is indeed a presumption, and, in fact, the Leveson v. Case by the Longstreet Court says it is a presumption, that was the last time that I believe they covered this case, 2010, then presumptions can be overcome. Right. And the courts, I think you correctly state, the courts have used the language and classified it as a presumption. But are there examples where the presumption was overcome by something close to what we have before us today? I cannot find any, to be honest with you. But I think the argument holds that if it's a presumption, any presumption by definition can be overcome. And the cases that I looked at, with or all, Dylan, which are cited by counsel in her brief, and we've cited and tried to distinguish those cases, have been instances where the heir, which is normally an instruction, but in this case it isn't, that the heir did not have any bearing on the so-called good counts or good allegations. And our argument is there were no good allegations because they were all tainted by this shadow of illegality. And then to compound it, there was a suggestion by Plinkus counsel, when he asked the question of Dr. Hussain, our client on the Sand, where weren't you at Sacred Heart Hospital previously when it went under because the owner had engaged in Medicare fraud. Objection sustained. Again, this taint of illegality was the thing. This issue of credentials was mentioned 57 times in the closing argument. And, in fact, it was compared to driving a car without a license, which is illegal. So, Justice Hoffman, I agree with your analysis that there was really no basis to get that type of evidence in and my job this morning is to persuade you that the general verdict rule should not apply in this case because the presumption was overcome by a taint. It was overcome by a suggestion that what this doctor did from the get-go was illegal. And that tainted every single allegation. And, with respect to smoking, what is particularly troubling here, as well, is that Dr. Koh, the causation expert, was able to contradict his deposition where it was clear that it was an error with respect to smoking and we couldn't challenge it because of the blanket prohibition. There was no rein of the evidence at that point. So, I would like to reserve the remaining time for rebuttal. Thank you. Counsel? Good morning, Your Honors. For the record, my name is Lynn Dowd and I am here today with my co-counsel, Nicholas Motherway. We represent the plaintiff, Appalachie Terry Ariant, who is the independent executor of the estate of the patient, in this case, Kathy Ariant, who is now deceased. Your Honors, if I may, I'd like to highlight a couple things and tell you what I'd like to cover and address Your Honors' concerns as succinctly as I can, if I may. First of all, I'd like to frame the issue of whether this jury verdict that was returned on five distinct theories of professional negligence should be affirmed because I'd just like to highlight the five theories. Being a medical malpractice case, by definition, they're complex, and Your Honor delineated a couple of those, but first and foremost, and this is important because it goes to the presentation of the evidence also, contrary to counsel's contention, that this was all about a doctor testifying about the illegality of another doctor practicing without privileges. A cold read of the record does not support that contention, first and foremost. But let me tell you what the five theories were. The first being Dr. Hussein never should have done this procedure at all. He never should have. They disagreed. Dr. Hussein said he should have. There was a pure standard of care opinion, disputed question of fact. Had nothing to do with privileges, nothing to do with smoking. Privileges never came after that. But Ms. Dabb, the verb in the sentence you just read is should, and who determines should is the state law, isn't it? I'm sorry, Your Honor. You said he shouldn't. You said, as a matter of fact, he should not have done the operation. Oh. Whether it was a deviation from the standard of care, it's not that state law defined that. It was the experts in a professional negligence action. And you sent this to the jury. Failing to recommend and or attempt to treat defendant's abdominal pain using more conservative modalities, including an interstitial spinal catheter pump. I think that's what you're talking about. That's the second theory of liability. Well, what's the first? That he never should have performed a procedure by selecting to do this celiac injection of a neurolytic block. It was a nerve block. No, that's not what went to the jury. The instructions said performing a celiac block with absolute alcohol. Yes. Does not indicate. That's correct, Your Honor. That's the process. The testimony with alcohol was improper. He never should have performed a procedure choosing to inject this patient with absolute alcohol. Yes. That's correct. That's theory number one. Number two is he should have done a more conservative treatment. I went through all of this. Okay. I understand what they went to the jury on, the five things they went to the jury on. All right. All right. Fair enough. Defendant's name didn't go to the jury on what does failing to possess privileges to perform celiac block have to do with approximate causal relationship? All right. I will address that, Your Honor. I think it is material and I respect it. There's no question there may be evidence if you're accusing him of being incompetent. There's no question. It didn't go to the jury on the theory that this man did not possess the ability to perform the operation. No one testified they didn't have the ability. The only testimony was he didn't have the privileges. I think that was part and parcel of Dr. Menor's opinion in explaining in his professional opinion what his profession requires and that it does go to a surgeon's qualifications. When we credential someone for any surgical procedure at the surgery center, the legislator in Illinois, in one of its few really good moves, said that if a doctor practices in a surgery center, they must have the same kind or like privileges in an Illinois licensed hospital. That's the law. Objection overruled? What was going on in that trial? I'd like to answer that. That wasn't the sole question about his privileges and the relevance thereof. Dr. Menor testified at length about him having in his career sat on boards deciding privileges. What are privileges? They define what a physician can and cannot do in a particular institution, whether it's a hospital or a surgical board. He commented that the legislature promulgated these rules that were a good idea, but this has become part and parcel of the profession and that the profession also requires to be a reasonably competent juror. How do you argue that if you send it to the jury with one of the allegations of negligence that he was incompetent and should not have performed this operation because he didn't have the skill or ability and that was the approximate cause of the injury? Great argument, but that's not what you send it to the jury on. Your Honor, maybe... I'm looking at the instructions. Yes, yes, and I've given a lot of thought to this. And I know Planned Parenthood's counsel argued and analogized to the Motor Vehicle Act, but I've given a lot of thought and I think the better analogy that we might all understand is dealing with patent attorneys. We've all gone to law school. I've worked on intellectual property cases, whether they're underlying a legal malpractice case or what have you, but I'm not a patent attorney. That requires a special set of skills, namely that you have an underlying technical degree. The public doesn't know this. If I accept a client into my office and I give them advice on how to proceed with a patent, what to do in their businesses, I think, and if they go on to follow my advice and that causes them damages, I think it would be fair and appropriate for another attorney to come in and say that by virtue of me practicing law as a patent attorney without having that special certification or license, that I committed negligence. I understand the point you're making, Ms. Dowd, but I don't think that's the same argument you made at the trial. As I read the trial transcript, it was state law, as Mr. Eaton said, 57 times. But Dr. Gore also, he didn't just say it was state law. He testified it was a deviation from the standard of care for Dr. Hussain to have performed these procedures at the surgical center without privileges. But the context of his comment was just what Justice Hawkins just read out, where he had the comment about the legislature in one of its very decent moves did such and such. Yes, and I think our Supreme Court, likewise, it was very smart when we finally had formal certification required for patent attorneys, death penalty practitioners, and the like. Now, those similarly were very good moves. But the point being that if you don't have that special certification or the privileges, you're not going to go in there in the first place. It is a professional requirement that prevents malpractice. Okay. You've got five issues. Yes. A is not affected by smoking. Correct. In any way, shape, or form. That's using absolute alcohol. B is affected by the refusal to allow them to introduce evidence of smoking because they had a witness that was ready to testify that smoking was what caused this, whatever. A constriction. Is it a constriction of the vessel? C says injecting absolute alcohol. It has nothing to do with smoking. Failing to possess privileges to perform celiac. That never should have been in the instruction anyway because there's no proximate causal relationship between lack of a license and an injury suffered. It's a proximate causal relationship between incompetence and the injury suffered. Incompetence. There may be evidence of incompetence by lack of privilege. But the lack of privilege did not cause injury. And then fail to place a spinal needle in front of L1 body. It has nothing to do with smoking. Right? It has nothing to do with. So we've got several of these issues that are affected by what I consider to be an absolute error in the denial of them the right to defend on the basis of smoking. You've got the general verdict rule. He raises one point. He said smoking went to proximate cause. Proximate cause is an issue in every one of these breaches. So now the question is if he's been deprived of introducing evidence of something that was a proximate cause, then doesn't that infect all of them? No. Why? And I'd like to explain why. And I would like to respectfully disagree that there's any absolute error with respect to the denial of smoking. And please let me explain this. First of all, they throw around the word stroke. There's cerebral strokes and there's vascular cord strokes. This case only involved a cord stroke. No expert, none, testified that smoking had anything to do with the cord stroke. The studies they talked about dealt with cerebral strokes. Materially, medically different. And there's no expert tying them in. But, Your Honor, in this case, the only tangential possible relevance smoking had was not to do with causation and vis-a-vis the negligence and the injuries at issue. It dealt with them arguing that smoking created a risk factor for a vasospasm. And their theory was vasospasms are just a normal risk of this procedure. Our experts disagreed that a vasospasm occurred at all. So the fundamental disputed issue of fact was whether there even was a vasospasm. But in support of their contention that there was a vasospasm, why can't they bring in someone to say she smoked for so many years and so many nights a day and that causes a vasospasm? They didn't have that. They didn't have that testimony. They only had general studies saying it was a risk. They couldn't tie it up. And, quite frankly, Your Honor, two cases I'd like to point to. Do we really know what they had or didn't have? Because they didn't get a chance to even get their foot in the door. Oh, bring me on in the proceedings. Well, it's their burden. It's their burden. We know what they had on Dr. Kuhl. Dr. Kuhl was our expert. He was our expert. No, we know what they had on Dr. Kuhl. He testified at trial contrary to what he said during his deposition, and they couldn't impeach him on it. He testified at trial, quote, no risk factor for a stroke. He testified at deposition. Defendant's lifelong smoking was a risk factor for stroke. He should have been impeached with it. He should have been impeached with it. He didn't say scribble. He said stroke. He never said court stroke, Your Honor. He said stroke. And they were only talking about stroke. When he turned around and said in his original testimony, he talked about no risk factor for a stroke, and that's in quotes. He didn't say no risk factor for a cerebral stroke. He didn't say no risk factor for a court stroke. He said no risk factor for a stroke, and that's contrary to what he said during his deposition. He should have been impeached. Your Honor, notwithstanding that, I'm sorry. And stroke is on the death certificate. I understand that it's on the death certificate, but if you look at all the evidence in the record, they claim they wanted to impeach him, but with what? They carried the burden of showing they could impeach Dr. Koh that her smoking created a risk factor for the stroke issue. Not any stroke, not if he's speaking in general terms. They had nothing. They had no expert that would come in and tie it to this stroke. They wanted to make an explanation when they impeached him and said, no, no, I wasn't talking about this type of stroke. I was talking about that type of stroke. And the jury's entitled to hear that, and they're entitled to weigh it, but they had a right to impeach him too. Only if they can demonstrate an expert and tie it to a court stroke. For the life of me, I cannot understand this. There was a motion limiting the bar testimony and or reference to the fact that the decedent was a lifelong smoker and maintained her habit until the date of death. It was granted because in the opinion of the trial judge, smoking is so prejudicial that it's probably the value was outweighed. What kind of silliness is that? Your Honor, if I may, in reading the record, I don't think this is silly or an academic issue because, you know, as appellate practitioners, we're not supposed to focus on any one judge, but I tried to look into this particular trial judge, and she's got, I think, nearly 30 years of experience, and this is all in the public record. She's worked through the municipal courts, the criminal courts, the civil courts, and on the record, this is not just a piece of boilerplate she pulled out of a case law. There was an extensive hearing on this, and she, the presiding judge stated, based on her experience, and I'm going to just speculate with hundreds of trials, just knowing the court call in Cook County, but in her own experience, she stated on the record that even if smoking had some probative value, she said the minute you, and I'm on page 124 of the record, this is the judge speaking, quote, the minute you say smoking in this case, the jurors are going to go back and go, she was a smoker. That's it. That's what they do. That's the prejudicial effect that smoking has in these particular cases, in all MEDNOW cases, and I deal with this routinely. But the issue is not what you're espousing right now. The issue under the Illinois Rules of Evidence is whether the evidence that was barred was relevant to the claims. Number one, I submitted not, and your honors are obviously going to make that determination. I don't think it was relevant at all, because no expert said that her smoking was a proximate cause of the injuries at issue. Not a one. The only small piece of relevance they have is that smoking was a risk factor for strokes generally, cerebral strokes. Not one expert tied it to the cord stroke that Mrs. Arian suffered, and that's their burden of proof. It's not just, you can't impeach people in the air with studies and opinions dealing with one type of stroke and try to confuse a jury, that's prohibited, to just use the general word stroke. Can I ask you a question? Yes, sir. After this business about there being no evidence of smoking, did the defense make any offer of proof? After that? Did the defense make any offer of proof when they were arguing the motion limiting to bar testimony of smoking? I read the hearing last night. After this, all I saw was discussions about what the various physicians were going to say, but there's nothing. Was there any offer of proof that there would be a witness who would testify for the defense that this woman's lifelong smoking was the proximate cause of her injury? No. That is not in the record. And, Your Honor, I would just refer the court to one case, and I can do a formal motion, but I notify counsel and oversight the Lagastes case, L-A-G-E-S-T-E-E. First district decided in 1999 that 303 of that third 935, which is one of the very rare published opinions dealing with smoking and studies and its relevance versus barring it. And in that case, it was determined it was properly excluded because the proponent of the evidence does have to tie it in with an expert, and they don't have that here. But if I could highlight one other point that I think is critical, despite all this, and for the sake of argument only, Your Honor, putting aside the smoking issue, we do have four other clean theories upon which the jury returned a verdict. And this is not a harmless hearing issue. Well, we're right back now to exactly what the strength of your argument is, and that's the general verdict rule. Yes. My only question on the general verdict rule is, was the barring of the evidence of smoking, did that evidence so go to the proximate cause that it prevented the jury from determining that it was the proximate cause as opposed to merely a proximate cause? And I suppose my question is, in the absence of an offer of proof, then in that particular case, can the defense make the argument that the smoking, the deprivation of the evidence of smoking, infected all of the other issues because of the proximate cause of it? No. And I would like to address this, if I may, because I think this is an important issue, and this case would provide the Court an opportunity to clarify this issue. Every appellant comes into this appellate court and screams prejudice. That's what we do as advocates. We all claim there's one or more errors that was prejudicial, but it is not enough to proclaim it. How do we prove it? What's our appellate burden of proof? And I've given some thought to this, and Your Honors could probably come up with more ideas, but to me there's at least three ways to meet a burden of proof on appeal of proving prejudice and reversible error. One is, certainly if you can find a legal decision on point, you tender it. The second is you prevail in your post-trial motion. What is more powerful than the presiding judge deciding there was reversible error in ordering a new trial? We don't have any case on point here. The trial judge heard an extensive hearing. She rejected it, and that is entitled to substantial deference. But the third way the law instructs we as practitioners of how we preserve and prove prejudice is through special interrogatories. It's not my burden to figure out what they should have tendered. Special interrogatories are hard to write. We know that. And quite frankly, in a case new and dear to Mr. Mudderley's heart and mind, the Foley v. Fletcher case, we worked on special interrogatories, and the general verdict issue came up there. And it actually goes back about 100 years. It was subsequently codified, but this rule is nothing new in the law. Trial counsels have been on notice of this forever, and it's their duty and their burden that when there are multiple theories of liability, it is not enough to come into a court and just scream and proclaim prejudice. They have to prove it through the special interrogatories. They didn't do that here. And interestingly, in the case that counsel cites, Robinson v. Baca, again, a first district decision from 2010. I don't know why anyone purses a case and only quotes select parts, but they tried to cite the special concurrence. Well, I would direct the court to the majority decision and the special concurrence. On page 407 of the decision, this is really, I think, a terrific case that explains the import of special interrogatories, the general verdict rule, the two-issue rule. All those terms are kind of tossed around interchangeably. And in Baca, the Court explains the distinction. The majority explains first, quote, because the jury rendered a general verdict for the defendant and could have relied upon the first proximate cause defense to find no liability, and because there is ample evidence supporting this defense, we cannot say that the plaintiff was prejudiced by the trial court's error in tendering the second paragraph. It's an appellate burden of proof issue. The special concurrence, which they parsed the quotation in their briefs, and I put out a third one at page 410 because the special concurrence disagrees and makes a very salient point. There, the special concurrence states, when the two-issue rule applies, review of a jury's general verdict is foreclosed in the absence of a special interrogatory explaining the basis for the verdict, much like review is foreclosed when the appealing party fails to submit a record that demonstrates the circuit court erred in its reasoning in ruling in favor of the opposing party. The special concurrence cites the Fouch Supreme Court decision, 99.02.389, which there they say, the Supreme Court said, in the absence of a transcript of the circuit court proceedings, the appellate court had to presume that the trial court acted in conformity with the law and ruled properly after considering the motion. So then the court goes on to say, when we affirm in the absence of a jury's answer to a special interrogatory explaining its general verdict, or in the absence of a transcript explaining the circuit court's ruling, we do so on the basis that the applicable presumption precludes review, not on the basis that the appealing party failed to demonstrate prejudice, though the latter is necessarily true as well. Without special interrogatories to test a general verdict, they can say there's prejudice till they're blue in the face. They have an obligation to have proved it. They could have tendered specials. They didn't, despite the smoking issue and the court's interpretation of the record, which I will fully respect. We had other theories that had nothing to do with smoking, nothing to do with privileges. They were pure differences of experts' opinions. The block should have never been performed. The spinal pump was the better, alternative, more conservative method. He placed the needles into the wrong artery. He did that wrong, getting the alcohol into the oedemperits, and he should have never injected into the oedemperits. It should have at most gone into the spinal canal. Let's take those points that you just made. Yes. And now let's overlay it with the problem of the licensing testimony. Yes. Doesn't the licensing testimony infect every one of those in the eye of an average juror? No. Number one, they should have asked a special to find that out. We're being called upon to speculate and just draw that conclusion, and that is totally unfair. It's unfair to the court system. It's unfair to the litigants. It's unfair to my client. It's unfair to the jurors. They worked very hard through this complex medical malpractice action. The privileges didn't come up later until later in the presentation of evidence. The expert testimony solely where Dr. Minora testified how he should not have injected this woman with absolute alcohol at all. He testified that was a deviation of the standard here, an approximate cause of her paraplegia and ultimate death. He testified to that. But still, and I use the word overlay again. It's not overlay. It's separate and distinct testimony. And I'm just, the reason that he didn't know enough not to use absolute alcohol, all right, is because he wasn't licensed properly and didn't pass some sort of test. Well, that explains why it was negligent not to have privileges. No, but let me respond to that, Your Honor. Dr. Minora, unlike Dr. Hussain, was privileged to perform this specific spinal block, and he testified about the limited specific cases where there are situations where it's appropriate. It's not that you just don't know it, but even he said in the most severe pancreatic cancer patients, for those with three to six months of life left, that is a very, very rare situation where you'd ever perform this block, and that would be within the standard of care. With this patient and her condition, he said it was a deviation of the standard of care to do it at all. It's not that Dr. Hussain didn't know. Dr. Hussain disputed that. He presented contrary testimony, saying it was perfectly appropriate for me to do this. His experts. They said it would deviate by injecting her with alcohol. He justified what he did by referencing the particular condition of this patient, but wasn't his testimony completely undermined by, again, the problem with the licensing? Because the jury is looking at him thinking this guy doesn't have a license to do this very sophisticated type of surgery. We don't know that the jury accepted that theory. We have no way of knowing if that was the basis of their verdict. That's pure speculation. Counsel, thank you. Thank you, Your Honor. Mr. Marbolo? Yes. Justice Hoffman, to answer your question, there was an offer of proof. It was in the record. We cited it in our reply brief, and counsel still answers your question that there's no offer of proof. It was their burden to prove that the causation was not a stroke that was on the death certificate. What was the offer of proof? C1774-46, which is in the record, and that site was also in the reply brief. We were challenging Dr. Koh's testimony that smoking was not involved in this particular instance, and there was no stroke because coroner said there was a stroke. To Dr. Koh, question, did smoking cause health problems? Answer, sure, yes. Question, and it did in her case. Correct answer. She had emphysema, COPD, and probably lung cancer related to it, referring to smoking. Yes. And, in fact, she had a stroke. Smoking can be a correlative factor in causing a stroke. Correct answer, as I've indicated. I understand. I know what he testified to in his deposition. I want to know what your offer of proof was at trial. His deposition. No, that's the impeachment. I don't have a problem with that. No. But what evidence did you present or make an offer of proof that smoking was the approximate cause of this lady's death? Anything or nothing? We were not allowed, first of all, to give the name, as you know, and, secondly, it was their burden. You weren't deprived of an opportunity to make an offer of proof. No, but counsel keeps saying that it was our burden of proof on the causation. It wasn't. No, no, no. We had a death certificate that said stroke. Your argument is you've been stripped of the ability to establish that smoking was the approximate cause of this lady's death. That has to be your argument, because if smoking wasn't the approximate cause, then in that particular case, you know, what's the argument? The only thing that you had that I can find here is Candido evidently testified in his deposition that this lady was predisposed to a vasospasm because she continued to consume tobacco. She was predisposed. But no one ever presented the trial judge with an offer of proof that said, if we had been allowed to call Dr. Candido and ask him whether smoking was the approximate cause of this lady's death, he would have answered in the affirmative. And then you'd have it. But there was no offer of proof, and there's no specimen around. We were not the only expert that testified as to causation. To counteract the death certificate was Dr. Crow. That was plaintiff's burden. We challenged and wanted to impeach his opinion, because if the jury didn't believe him that they had as a death certificate that says stroke, we wanted to impeach him with his own testimony that smoking was a risk factor for stroke, which supports the coroner's conclusion. So we believe that's enough, because it was on our burden when there had already been a death certificate. And one other thing, too, because I think there's been ‑‑ I just want to be clear. There's two causation requirements here. One, there's the list of the negligent allegations which caused the vasospasm, which caused the paraplegia. Dr. Hussain testified at trial, his own testimony. Yes, the paraplegia was caused by the performance of the surgery, because it was a no‑risk. Then she's in the nursing home, and she's in the nursing home for like a year and a half. She continues to smoke. What we're talking about there is the cause of death after the surgery, not what caused the vasospasm, what caused her death ultimately. The coroner said it was a stroke. Dr. Coe said, in fact, she had emphysema, COPD. The cause of death was fated to thrive through the paraplegia. That was his opinion. That was his opinion, yes. The coroner said it was a stroke, and the coroner didn't try to dice, well, it was this type of stroke or that type of stroke. He said it was a stroke. Dr. Coe said, yes, smoking could be a risk factor, particularly with light of all these other conditions. That's all we wanted to get in. So the jury would doubt Dr. Coe was correct, and they would not have met their burden of causation, and we were not allowed to do that. The other thing I want to mention is the counsel said, well, there was a lot of evidence as to the standard of care as to whether or not he should have had privileges. Dr. Menor said that the standard of care is violated because he didn't have privileges. Dr. Candido said he had privileges. If we have a fair fight and we have one doctor saying the standard of care is violated and another doctor says it isn't, that's fine. That's a fair trial. But what we have here was the imposition of a statute which says, but it was illegal. So that breaks the tie between the two experts, and that was very prejudicial. And for the life of me, I cannot figure out what special in our case you're going to ask if we believe, and we still believe very strongly, that they've infected every single allegation. If this doctor illegally performed the operation, then wouldn't it make sense to think, well, he probably didn't do the needle thing right, he probably shouldn't have used alcohol. He did it illegally, and that was the testimony, and we believe that strongly overcomes the presumption. So as to both counts, both with respect to whether or not the privileges infected the entire verdict, again, I don't know how you could properly pose a special interrogatory without going through every single allegation and say, was this yes, was this yes, was this yes, was this yes? What about the causation? Could you have done that? Pardon? Could you have done that? Could you have asked a special interrogatory, do you believe the insertion of a needle at L1, L-1, was a proximate cause of this lady's death? Yes or no? Is that a legitimate special interrogatory? No. Why not? Because the special interrogatories in the case I think has been clear is it has to test the general verdict. And unless you did that with every single one, for example, the needle placement. I just asked you a question. Could you do it on every single one? I don't think so, because then you've also got the causation issue in there too, Your Honor. And I wouldn't have done it. You could do it and ask them if it was a proximate cause of this lady's death, because it only has to be a proximate cause. And additionally, I understand, but if, for example, they said two yes, three no, that would have been a nightmare. Plus, I think this Court knows through special interrogatory jurisprudence that courts will not allow something to be tested unless it's going to absolutely affect the general verdict. And if it doesn't, then they won't allow special interrogatories in. And under these circumstances, the way we would have to do it, no, I don't think it could have been done. And so, again, my central argument, which I made previously and I know this Court knows, is that in this case, the presumption was overcome. The general verdict rule does not apply because it affected every single allegation. Okay. Thank you very much, Your Honor. Thank you. The matter will be taken under incision. Court is adjourned.